IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MARGARET C. PHILLIPS,           )
                                )
            Plaintiff,          )
                                )       No. 04 C 2437
vs.                             )
                                )       Magistrate Judge Schenkier
JO ANNE B. BARNHART,            )
COMMISSIONER OF SOCIAL SECURITY, )
                                )
            Defendant.          )

## MEMORANDUM OPINION AND ORDER

Plaintiff, Margaret Phillips, seeks judicial review of a final decision denying her application for disability insurance benefits under Sections 405(g) and 416(i) of the Social Security Act. 42 U.S.C. §§ 405(g), 416(i) (2004). Ms. Phillips filed her application on November 27, 2001, alleging that she became disabled on or about February 26, 2001 (R. 58), due to epilepsy, diabetes, high cholesterol, high blood pressure and headaches (R. 76-77). Ms. Phillips's application was denied and, on July 9, 2003, an administrative hearing was held before the Administrative Law Judge (the "ALJ"). During the hearing, Ms. Phillips, who was represented by counsel, testified to suffering from the following additional conditions: finger and feet numbness, right ankle pain, allergies, back problems, fatigue, and sleep apnea (R. 394, 398, 402, 403, 420, 422-423).

Ms. Phillips's application was denied by the ALJ in a written decision dated November 24, 2003 (R. 16-22). The ALJ determined that Ms. Phillips was not disabled because her medically determinable impairments did not meet or medically equal a listed impairment, and she had the residual functional capacity ("RFC") to perform certain types of unskilled sedentary work (R. 22). Ms. Phillips, through her attorney, sought review of the ALJ's decision on December 8, 2003 (R. 8-

12). The Appeals Council denied Ms. Phillips's request for review on March 4, 2004 (R. 5-7), making the ALJ's decision the final decision of the Commissioner. This lawsuit followed.

Ms. Phillips now seeks summary judgment reversing the Commissioner's decision or, in the alternative, remanding the case for further proceedings (doc. # 15). The Commissioner has filed a cross-motion for summary judgment to affirm the decision below (doc. # 17). By consent of the parties, pursuant to 28 U.S.C. § 636(c), the case has been reassigned to this Court for all purposes, including entry of final judgment (doc. ## 5-7). For the reasons stated below, the Court grants Ms. Phillips's motion for summary judgment and denies the Commissioner's motion for summary judgment.

## I.

The following facts are taken from the administrative record, the administrative hearing transcript, and the ALJ's written decision. The Court will first discuss Ms. Phillips's personal and medical history, followed by a summary of the hearing testimony and the ALJ's written decision.

## A.

Ms. Phillips was born on October 28, 1954, making her 48 years old at the time of the hearing (R. 386). Ms. Phillips is married and lives with her husband and son (R. 386). She is 5 feet 5 inches tall and weighs approximately 240 pounds (R. 386). Ms. Phillips graduated from high school and has received no formal education since (R. 386). At the time of the administrative hearing, Ms. Phillips had not been employed since approximately February 26, 2001 when she left her full-time job as a bagging machine operator after having a seizure at work (R. 58, 77, 391). Ms. Phillips held that position for approximately nine years. At the same assembly warehouse operation, she also worked for approximately two years as a seasonal machine cleaner (R. 387-388). On July 7,

2001, Ms. Phillips sought medical treatment for a slip and fall injury to her right ankle (R. 132-139). She was diagnosed with an ankle fracture and underwent surgery to repair the ankle on July 18, 2001. The procedure consisted of a plate and screw fixation of the distal fibula (R. 136).

On December 14, 2001, Dr. Bhatia, a treating physician, completed an epilepsy report requested by the Social Security Administration (R. 140-142). In his report, Dr. Bhatia described Ms. Phillips's current diagnosis as complex partial seizures. He noted that Ms. Phillips had reported having epilepsy for about 20 years. Dr. Bhatia further noted that Ms. Phillips's was compliant with her medication and came to see him every three months. He described the frequency of her seizures as occurring once every two months. The doctor prescribed Dilantin (200mg.), Tegretol (400/600mg.) and Neutrontin (300mg.). Dr. Bhatia described potential side-effects of these medications as dizziness, ataxia (the inability to coordinate voluntary muscular movements), and dysarthria (difficulty in articulating words) (R. 141). Dr. Bhatia stated that, as a result of her condition, Ms. Phillips was not able to travel by herself, but was unrestricted in her ability to sit, stand, move about, lift, carry, handle objects, hear, and speak (R. 142).

The treatment notes made by Dr. Solomon, a treating physician, begin on October 27, 1997. Relevant to the disability determination, the doctor's records indicate that at various times throughout the treatment period Ms. Phillips suffered from periodic seizures, obesity, diabetes, headaches, occasional impaired balance, hypertension, allergic rhinitis, left achilles tendonitis, low-tension glaucoma, low back pain, and fatigue (R. 149-240). Dr. Solomon's notes indicate that she repeatedly advocated the importance of leading a healthy life style, referred Ms. Phillips to a nutritionist, and expressed concern that Ms. Phillips lacked the motivation to loose weight and exercise. Dr. Solomon's notes further reveal that Ms. Phillips suffered a seizure while driving on

3

December 29, 2000 (R. 158). On June 22, 2001, Ms. Phillips had another seizure while driving, which was witnessed by her son who was sitting in the front seat of the vehicle (R. 95, 119).

On November 1, 2001, Ms. Phillips saw Diane Swaney-Smith, a licensed and registered dietitian. Ms. Swaney-Smith recommended that Ms. Phillips adopt an 1800 calorie a day, low sodium, low fat, low cholesterol diet (R. 243).

On February 6, 2002, Dr. Rebecca Miner, a Social Security Administration Physician, completed a RFC assessment of Ms. Phillips's ability to sustain gainful employment (R. 245-252). Dr. Miner stated that Ms. Phillips's primary impairment is her seizure disorder and that "[h]er medical reports do not indicate listing level seizure activity" (R. 252).

On May 21, 2002 Dr. Gail Gizzo, a treating physician, submitted a Diabetic Report to the Social Security Administration. In that report, Dr. Gizzo noted that Ms. Phillips suffered not only from diabetes, but also "HTN" (hypertension), "hyperlipidemia" (a high level of lipids in the blood), and "seizure disorder" (R. 244). Dr. Gizzo stated that Ms. Phillips was compliant with her therapy, and had "no restriction" in her ability to perform work-related activities "such as sitting, standing, moving about, lifting, carrying, handling objects, hearing, speaking, traveling" (R. 244).

Dr. Li Zhang, a neurological specialty clinic physician, treated Ms. Phillips from August 14, 2002 through June 24, 2003 (R. 262-278). Dr. Zhang wrote a letter to the treating physician, Dr. Gizzo, detailing Ms. Phillips's progress on November 21, 2002 (R. 274). In the letter, Dr. Zhang stated that Ms. Phillips reported not having had a seizure since August 20, 2002. Dr. Zhang also reported that Ms. Phillips was suffering from frequent severe headaches. In a subsequent letter to Dr. Gizzo, Dr. Zhang reported that, as of January 30, 2003, Ms. Phillips was suffering frequent migraine headaches, but had "no recurrence of seizures over the last several months" (R. 272). In

4

subsequent reports dated February 20, April 22, and June 24, 2003, Dr. Zhang noted that Ms. Phillips's seizure disorder seemed under control, and her headaches were less severe (R. 267, 357). In particular, Dr. Zhang's June 24, 2003 report noted that Ms. Phillips reported "feeling better" in connection with headaches (R. 357). Dr. Zhang further noted that upon examination, Ms. Phillips was alert and moved all extremities with normal strength and without tremors (*Id.*).

From July 7, 2002 to March 3, 2003, Ms. Phillips received various medical services from Good Samaritan Hospital. Her treatment records indicate that she was suffering renewed pain from her prior ankle repair surgery (R. 314-321).

On July 3, 2003, a Polysomnographic Sleep Study performed at Good Samaritan Hospital indicated that Ms. Phillips suffers from severe obstructive sleep apnea (R. 362-364). On July 11, 2003, Dr. Gizzo submitted a Residual Functional Capacity Questionnaire to the Social Security Administration (R. 365-369). In it, Ms. Phillips is diagnosed with the same conditions as in May 2002, with the addition of sleep apnea (R. 365). Dr. Gizzo opined that Ms. Phillips had "moderate limitations" in her ability to deal with work stress; was able to sit for forty-five minutes at a time and to stand for twenty minutes at a time; could sit about four hours in a given eight hour work day, should walk every ten minutes, and could walk less than two hours in a work day (*Id.* 366-67). Dr. Gizzo also reported that Ms. Phillips suffered from anxiety and depression, as well as frequent headaches and foot pain (*Id.* 365-66). Dr. Gizzo further opined that Ms. Phillips could lift and carry no more than 10 pounds frequently (and 20 pounds occasionally); had no significant limits in repetitive reasoning, handling or fingering; had limits in her ability to bend and twist; and might miss work once a month (*Id.* at 368). Dr. Gizzo said the earliest onset date for these symptoms and limitations was February 1, 2002 (*Id.*).

5

**B.**

At the administrative hearing, Ms. Phillips testified that she has not performed any paid work since she left her position as a bagger machine operator (R. 391). Ms. Phillips testified that she stopped working after having a seizure at work on February 27, 2001 (R. 391). She further testified that she was offered a different job at the same facility but she declined the offer because it also involved operating a machine (R. 391). Ms. Phillips testified to unsuccessfully attempting to get with Target and other potential employers since then (R. 391).

At the hearing, Ms. Phillips's attorney claimed that Ms. Phillips is disabled and that, due to a combination of her impairments, she is unable to sustain substantial gainful activity (R. 383-385). Her attorney stated that Ms. Phillips has severe epileptic "petit mal"[1] seizures; she suffers from diabetes mellitus Type II; since fracturing her right ankle and receiving ankle repair surgery, she has difficulty walking due to periodic swelling in her right leg which causes pain; and, Ms. Phillips suffers from migraine headaches, allergies and also has numbness in her feet and hands (R. 383-385). At the time of the administrative hearing, Ms. Phillips testified that she had a driver's license, but she had not "been behind a wheel in over three years almost" (R. 387). Ms. Phillips further testified that her doctor ordered her to not drive because of her epileptic seizures (R. 387).

Regarding Ms. Phillips epilepsy, Ms. Phillips testified that she was about twenty three years old when she had her first seizure (R. 391). She reported that she licks her lips, stares straight ahead, and freezes but does not fall (R. 417). Unless a witness tells her, Ms. Phillips testified that she does not know when she has a seizure (R. 392). Ms. Phillips stated that sometimes she gets a "little tickle

---

[1]THE AMERICAN MEDICAL ASSOCIATION COMPLETE MEDICAL ENCYCLOPEDIA defines petite mal seizures as "a type of seizure characterized by brief episodes of loss of awareness." AMERICAN MEDICAL ASSOCIATION COMPLETE MEDICAL ENCYCLOPEDIA 101 (Jerrold B. Leikin, M.D., Martin S. Lipsky, M.D. eds., Random House Reference 2003).

in my stomach" which might indicate that a seizure would or had occurred (R. 392–393). Although Ms. Phillips testified that she had not had a reported seizure since August 2002 (a period of eleven months prior to the July 2003 hearing), Ms. Phillips told the ALJ that because she spends most of her time alone, she may have suffered seizures that she does not remember (R. 393).

Ms. Phillips also testified that she was suffering from type II diabetes, poor sleep, dizziness, numbness in hands and feet, high blood pressure, right ankle/foot pain, headaches, high cholesterol, allergies, and back pain. For her diabetes, Ms. Phillips stated that she took Avandia and that her condition was under control as a result (R. 394). Ms. Phillips stated that the numbness she was experiencing in her hands and feet had only started about three or four months before the administrative the administrative hearing. The ALJ asked Ms. Phillips several questions aimed at discovering the effect of the numbness she was experiencing on her ability to perform basic tasks. Ms. Phillips testified that she was able to hold a cup, write, open a doorknob using a towel, button buttons, pull zippers, open a jar, and operate a manual can opener (R. 395-397).

Ms. Phillips stated that she had not suffered "real bad back-pain" for some time (R. 424). According to her testimony, lifting boxes at her last job is what caused her back pain to flare up (R. 425). In describing her ankle pain, Ms. Phillips testified as to the events surrounding her July 7, 2001 slip-and-fall injury and explained that her renewed pain was at least partially the result of recently dropping a table onto her foot (R. 398-400).

The ALJ then inquired into the severity of Ms. Phillips headaches. She testified that her headaches were a daily occurrence and that a recent prescription of Maxalt was helpful, although she indicated that she was building a tolerance to the medication (R. 400-401). Because of the price of the medication and a pharmacist's recommendation that Maxalt not be taken daily, Ms. Phillips

testified that she most recently had just been taking Tylenol. According to Ms. Phillips, no matter what medication she takes, she gets a headache around lunch and has to lay down for an hour and a half to three hours in order to wait for the pain to subside (R. 419). Ms. Phillips indicated that the Tylenol she takes does help her headaches.

She also testified that she takes Lipitor for her cholesterol (R. 401), Allegra and Flonase for her allergies (R. 403), and Norvasc for high blood-pressure (R. 404). In addition to these medications, Ms. Phillips stated that she takes Mylanta, Topamax, Tegretol, and Dilantin. According to her testimony, Ms. Phillips takes her medication regularly even though the medications make Ms. Phillips very drowsy (R. 417, 420).

Ms. Phillips testified that she had lost eight pounds by watching her diet, but that she could not exercise (R. 402). Ms. Phillips later stated that she sometimes can slowly walk on a treadmill for about 15 minutes at a time (R. 405). The ALJ asked Ms. Phillips other questions about her exertional abilities. According to her testimony Ms. Phillips performs a number of household activities including dusting, cleaning, and laundry (R. 19, 110-116). She attends church services, visits family, does errands, and goes out to dinner and to the movies with her husband (R. 19, 110-116). She also walks with her husband at the grocery store for not more than one half hour, goes up and down stairs slowly, talks on the phone, showers, and bathes and grooms herself. She also can pick up an object off the ground, can "probably" lift a gallon of milk, and can reach up into her cabinets (R. 406-411). She testified that she can not help falling asleep at the movies and in other situations where she remains seated for long periods of time. Ms. Phillips, according to her testimony, also gets very sleepy while reading.

The ALJ also received testimony from Ms. Marian Perkins-Phillips, Ms. Phillips sister-in-law.[2] Ms. Perkins-Phillips testified that she had witnessed a seizure on August 7, 2002. She stated that during that seizure episode, which lasted less than a minute, Ms. Phillips stared, rubbed her thumb and fingers together, licked her lips, and appeared unaware of her surroundings (R. 429-431). After Ms. Phillips became conscious, Ms. Perkins-Phillips testified that Ms. Phillips was dysfunctional, or, as the ALJ characterized her state, "out of it," for at least an hour after the episode (R. 433).

The final witness was Mr. Selmer Phillips, Ms. Phillips's husband of fourteen years. He testified that Ms. Phillips's medications worked "for awhile," but that her motor skills were worsening and that she was experiencing memory loss (R. 436). Because of this, Mr. Phillips testified to assuming more household activities including cooking, cleaning, and going to the store. Mr. Phillips testified that he had witnessed frequent seizures in the months preceding the administrative hearing. According to Mr. Phillips, these seizures usually occurred while Ms. Phillips was watching television at home or sleeping (R. 438). Mr. Phillips described Ms. Phillips seizures as non-violent and lasting about one or two minutes (R. 435, 439). He stated that, when having a seizure, Ms. Phillips rolls her eyes back, licks her lips, and makes an audible choking sound (R. 439).

Mr. Phillips testified that he does not tell Ms. Phillips or her doctors about all of her seizures because he is concerned that doctors will prescribe Ms. Phillips more medication (R. 440). He stated that each time he tells Ms. Phillips that she had a seizure, she calls her physician and the physician always responds by prescribing new medicine. Mr. Phillips further testified that the new

---

[2]Ms. Perkins-Phillips, a lawyer, withdrew as Ms. Phillips' attorney on May 21, 2003 (R.30).

9

prescriptions do not help Ms. Phillips's condition, and that he is concerned for her general and liver health because she has taken so many medications.

## C.

The ALJ issued his decision on November 24, 2003, applying the standard five-step sequential evaluation pursuant to 20 C.F.R. §§ 404.1520 and 416.920 (2005). At Step 1, the ALJ found that Ms. Phillips had not engaged in substantial gainful activity since the alleged onset date of her disability (R. 21). At Step 2, the ALJ found that Ms. Phillips suffers severe impairments including epilepsy, hypertension, diabetes mellitus, obesity and sleep apnea (R. 21). At Step 3, the ALJ found that Ms. Phillips's impairments do not meet or medically equal any of the impairments listed in the regulations as so severe that they preclude substantial gainful activity (R. 22). At Step 4, the ALJ determined that Ms. Phillips's residual functional capacity ("RFC") precluded her from performing her past relevant work as a machine bag operator. 20 C.F.R. § 404.1565. At Step 5, the ALJ found that Ms. Phillips's RFC allowed her to perform a significant number of jobs in the national economy.

The ALJ found that medical evidence indicated that Ms. Phillips's seizure disorder was responsive to therapy and that her seizures were stable (R. 18). The ALJ found that Ms. Phillips's testimony regarding her symptoms was not fully credible (R. 19). The ALJ noted that, although Ms. Phillips testified that she had not driven a car for the past three years, her medical records and a written statement made by her son indicated that she had two seizures while driving during this time period (R. 19). The ALJ found that Ms. Phillips's allegations concerning the severity of her symptoms were not supported by objective medical evidence in the record (R. 19). The ALJ also

10

found that Ms. Phillips's symptoms might not have been as serious as she alleged since she failed to follow-up on her doctor's life-style change, exercise, and weight-loss recommendations (R. 19).

The ALJ also found that Ms. Phillips retained the RFC to perform unskilled sedentary work, as long as it did not involve exposure to unprotected heights or dangerous moving machinery and tools (R. 20-21). The ALJ stated that the unskilled sedentary work that Ms. Phillips could perform would require the "ability to lift no more than ten pounds," walk and/or stand no more than "about two hours of an eight-hour workday" (R. 21). Such work would also require the capacity for "seeing, manipulation, and understanding, remembering, and carrying out simple instructions" (R. 22).

The ALJ examined the medical opinions found in Ms. Phillips's record. He noted a discrepancy between two written opinions provided to the Social Security Administration by Dr. Gizzo. Dr. Gizzo's first opinion is dated May 21, 2002 and her second opinion is dated July 11, 2003 (R. 19-20). The July 11, 2003 opinion (R. 365), in which Dr. Gizzo opines that Ms. Phillips suffers multiple exertional restrictions, is generally corroborative of Ms. Phillips's testimony. The ALJ, however, found that the July 11, 2003 opinion deserved little weight because it was conclusory and not supported by clinical and laboratory evidence. Further, the ALJ found that Dr. Gizzo's July 11, 2003 report was inconsistent with her May 21, 2002 opinion (R. 244), which stated that Ms. Phillips had no restrictions on her ability to "perform work-related activities like sitting, standing, moving about, lifting/carrying, handling objects, hearing, speaking, or traveling." The July 11, 2003 report was also inconsistent with Dr. Bhatia's December 2001 assessment that Ms. Phillips's only limitation was that she not travel by herself (R. 20, 140-142).

In assessing Ms. Phillips's RFC, the ALJ indicated that her attempts to find work suggested that "inability to obtain work, as opposed to inability to perform work, may be a motivation behind

11

the current application" (R. 19). Although the ALJ found that the testimony of Ms. Phillips's husband and sister-in-law corroborated Ms. Phillips's testimony, he accorded their testimony less weight because of their close relationship to Ms. Phillips and the absence of corroborative objective medical findings.

## II.

We begin with a brief overview of the relevant legal standards. To establish a "disability" under the Act, a claimant must show an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A)(2004). A claimant must demonstrate that her impairments prevent her from performing not only her past work, but also any other work that exists in significant numbers in the national economy. *See* 42 U.S.C. §§ 423(d)(2)(A).

The social security regulations prescribe a sequential five-part test for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520 (2004). Under this test, the ALJ must consider: (1) whether the claimant is presently unemployed; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) whether the claimant is unable to perform her past relevant work; and (5) whether the claimant is unable to perform any other work existing in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520; *see also Young v. Sec'y of Health and Human Services*, 957 F.2d 386, 389 (7th Cir. 1992). A finding of disability requires an affirmative answer at either Step 3 or 5. A negative answer at any step other than Step 3 precludes a finding of disability. *Id.* The claimant bears the

burden of proof at Steps 1 through 4, after which the burden of proof shifts to the Commissioner at Step 5. *Id.*

In reviewing the Commissioner's (here the ALJ's) decision, this Court may not decide facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir.1994). The Court must accept the findings of fact which are supported by "substantial evidence" (42 U.S.C. §§ 405(g) (2004)), defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Herron*, 19 F.3d at 333 (quotations omitted). Where conflicting evidence allows reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner (or the ALJ), not the courts. *See Herr v. Sullivan*, 912 F.2d 178, 180 (7th Cir. 1990); *see also Stuckey v. Sullivan*, 881 F.2d 506, 509 (7th Cir. 1989) (the ALJ has the authority to assess medical evidence and give greater weight to that which the ALJ finds more credible). The Court is limited to determining whether the Commissioner's final decision is supported by substantial evidence and based upon proper legal criteria. *Ehrhart v. Sec'y of Health and Human Services*, 969 F.2d 534, 538 (7th Cir. 1992). A finding may be supported by substantial evidence even if a reviewing court might have reached a different conclusion. *See Delgado v. Bowen*, 782 F.2d 79, 83 (7th Cir.1986) (per curiam).

That said, the Commissioner (or ALJ) is not entitled to unlimited judicial deference. The ALJ must consider all relevant evidence, and may not select and discuss only that evidence which favors his or her ultimate conclusion. *See Herron*, 19 F.3d at 333. Although the ALJ need not evaluate in writing every piece of evidence in the record, the ALJ's analysis must be articulated at some minimal level and must state the reasons for accepting or rejecting "entire lines of evidence."

13

*Id; see also Young*, 957 F.2d at 393 (ALJ must articulate reason for rejecting evidence "within reasonable limits" if there is to be meaningful appellate review). The written decision must provide a "logical bridge from the evidence to [the] conclusion" that allows the reviewing court a "glimpse into the reasoning behind [the] decision to deny benefits." *See, e.g., Zurawski v. Halter*, 245 F.3d 881, 887, 889 (7th Cir. 2001) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). This is especially true regarding credibility determinations, since both the case law and the regulations require an ALJ to minimally articulate the specific reasons for the credibility finding. *Zurawski*, 245 F.3d at 887. Specific reasons are required so that the reviewing Court can ultimately assess whether the ALJ's determination was supported by substantial evidence or, if not, was "patently wrong." *Id.* (quoting *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000)).

### III.

Ms. Phillips challenges the ALJ's findings on several grounds. *First*, Ms. Phillips asserts that the ALJ's Step 3 determination is not supported by substantial evidence. *Second*, Ms. Phillips claims that the ALJ's RFC determination does not comply with the requirements of SSR 96-8p and SSR 02-01p. *Third*, Ms. Phillips claims that the ALJ's credibility determination is patently wrong. We address these challenges in turn.[3]

### A.

Ms. Phillips asserts that the ALJ's Step 3 determination was not based on substantial evidence. In that finding, he ALJ stated that:

---

[3] In her opening brief (but not her reply), Ms. Phillips also asserts, as a separate argument, that the ALJ ignored evidence favorable to her (Pl.'s Mem. at 24-30). To the extent relevant, we address the points raised in this section of plaintiff's brief in our discussion of the three arguments identified above.

> The medical evidence indicates that the claimant has epilepsy, hypertension, non-insulin dependent diabetes mellitus, obesity, and sleep apnea, impairments that are severe but not severe enough to meet or medically equal a Listing.

(R. 17). The ALJ also held that Ms. Phillips's medically determinable impairments did not "meet or medically equal" any impairment listed in Appendix 1, Subpart P, Regulation No. 4 (R. 22). Ms. Phillips argues that the failure of the ALJ to "even cite a listing" in making these determinations constitutes reversible error as a matter of law (Pl.'s Mem. at 19).

We disagree. The ALJ's failure to cite a listing does not automatically invalidate a Step 3 finding. *Rice v. Barnhart*, 384 F.3d 363, 369-370 (7th Cir. 2004) ("As to [the Plaintiff's] argument that the ALJ's failure to explicitly refer to the relevant listing alone necessitates reversal and remand, we have not yet so held and decline to do so here"). Only where the ALJ both fails to cite a listing and provides "nothing more than a superficial analysis" is a reversal and remand required. *Rice*, 384 F.3d at 370. Reading the ALJ's opinion as a whole, as we must, *Rice*, 384 F.3d at 370 n.5, we find that the ALJ's discussion of the evidence provides substantial evidence for his Step 3 determination.

The only listing that Ms. Phillips cites is Listing 11.03, which states as follows:

> Nonconvulsive epilepsy (petit mal, psychomotor, or focal), documented by detailed description of seizure pattern, including all associated phenomena, *occurring more frequently that one weekly in spite of at least 3 months of prescribed treatment*. With alteration [check] of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

(Pl.'s Mem. at 20) (emphasis added). The ALJ found that Ms. Phillips suffered from nonconvulsive petit mal seizures, which had been treated with medication for some time. The ALJ further found that Ms. Phillip's seizure disorder was generally stable, and that her seizures were "quite infrequent" (R. 18). To support that determination, the ALJ cited numerous medical records showing

Ms. Phillips experienced seizures far less frequently than once a week (R. 18). The ALJ also cited to an administered EEG indicating that her results were only "mildly abnormal," and a Social Security Ruling noting that "most epileptic seizures are controllable and individuals who receive appropriate treatment are able to work" (R. 18). The ALJ's discussion of Ms. Phillips's seizure disorder was far from perfunctory, and reveals that his determination that Mr. Phillips did not meet a listing is based on substantial evidence.

Ms. Phillips argues that, even if her impairments do not meet a listed impairment, her condition may "equal" a listed impairment. Even if a claimant's impairments do not meet the specific requirements of a listing, he or she will still be determined disabled if the impairment equals a listed impairment. 20 C.F.R. § 404.1520(d); *see also Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2000). If a claimant has multiple symptoms, the ALJ must assess whether the cumulative effect of those symptoms medically equals a listed impairment. 20 C.F.R. § 404.1526(a); see *Lewis*, 236 F.3d at 514; *Lester v. Chater*, 81 F.3d 821, 829 (9th Cir. 1995). The ALJ will base the equivalence determination on medical evidence only. 20 C.F.R. § 404.1526(b).

Ms. Phillips contends that the ALJ's failure to specifically compare the effect of her cumulative impairments with Listing 11.03 is prejudicial (Def.'s Mem. at 20-21). However, in *Lewis*, the Seventh Circuit explained that, if there is no "plausible" theory that supports medical equivalence, the ALJ's determination does not have to be buttressed by a specific discussion of whether aggregate ailments equal a factor in a listing. *Lewis*, 236 F.3d at 514. Here, although the ALJ did not explicitly discuss whether Ms. Phillips's combined ailments equal the Listing 11.03 frequency requirement, Ms. Phillips has offered no theory – "plausible or otherwise" – as to how her

seizure disorder and other ailments combine to equal a weekly seizure pattern. Therefore, this Court finds that the ALJ's Step 3 determination was supported by substantial evidence.

## B.

Next we address the ALJ's Step 4 finding that Ms. Phillips's RFC enables her to perform unskilled, sedentary work (R. 20). Ms. Phillips alleges that the ALJ's RFC evaluation was "patently wrong" for several reasons, which we consider in turn.

## I.

Ms. Phillips contends that the ALJ erred by affording Dr. Gizzo's July 2003 report little weight (Pl.'s Mem. at 21-22). In that report, Dr. Gizzo opined that Ms. Phillips has a variety of exertional limitations (R. 366-68). The ALJ gave several reasons for discounting that opinion. *First*, he found that Dr. Gizzo's July 2003 opinion concerning Mr. Phillips's limitations on walking, standing, and sitting was conclusory and not supported by medical evidence (R. 20). An ALJ may decline to afford a treating physician's opinion controlling weight if the record does not provide objective clinical findings to support her conclusion. *Henderson ex. Rel. Henderson v. Apfel*, 179 F.3d 507, 514 (7th Cir. 1999). And, we agree that here, Dr. Gizzo's July 2003 report provides no objective findings to support her opinion. The report identifies certain conditions from which Ms. Phillips suffers, but offers no explanation as to how those conditions create the cited limitations.

*Second*, that shortcoming is particularly significant because, as the ALJ found (R. 20), Dr. Gizzo's July 2003 report contradicted her earlier May 2002 report, in which Dr. Gizzo opined that Ms. Phillips suffered "no restriction" in her ability to do work-related activities (R. 244). Ms. Phillips alleges that there is no inconsistency between the two reports because the second report was written later, and thus simply reflected Dr. Gizzo's "longitudinal history of examination and

17

treatment" of Ms. Phillips over time (Pl.'s Mem. at 21). However, the July 2003, report Dr. Gizzo states that the symptoms and limitations described in that report were present as far back as February 1, 2002 – a date that precedes by some three months Dr. Gizzo's May 2002 report, in which she found Ms. Phillips to have no restrictions as of that date. Therefore, the discrepancy between the reports is not easily attributable to "longitudinal treatment" or a worsening of Ms. Phillips's condition.[4]

An ALJ may give less weight to a treater's opinion when it lacks consistency with other parts of the record. *See* 20 C.F.R. 404.1527(d). Thus, given that the description of Ms. Phillips's work-related limitations found in Dr. Gizzo's July 2003 report was not generally supported by the record evidence and was inconsistent with Dr. Gizzo's own May 2002 report, the ALJ's decision to afford it less weight was based on substantial evidence.

**2.**

Ms. Phillips also asserts that the ALJ's discussion of her seizure disorder contains several errors of fact that compel remand. Conclusions based on mistaken facts constitute reversible error. *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996). The ALJ cited a November 2002 report from Dr. Zhang, a neurologist, to the treating physician Dr. Gizzo, in which he reported Ms. Phillips's seizure disorder as stable on medication (R. 18). Ms. Phillips contends that Dr. Zhang "diagnoses only seizure disorder; she does not mention stable. She does not state 'stable' on medications" (Pl.'s Mem. at 21-22). This contention is without merit. The November 2002 report states the following:

---

[4]We further note that Dr. Gizzo's July 2003 opinion that Ms. Phillips's limitations existed no earlier than February 2002 does not support Ms. Phillips's claim of disability status as of February 26, 2001.

18

"Impression: 1. Seizure disorder – This seems to be quite stable on the three anticonvulsants as mentioned above" (R. 274).

Ms. Phillips also argues that the ALJ misattributed a June 24, 2003 report to the treating physician, Dr. Gizzo (R. 18), when the report was actually generated by Dr. Zhang (R. 357). On this point, Ms. Phillips is correct (Dr. Gizzo is listed as the referring physician at the top of the report, which may have been the source of the ALJ's error). However, not every mistake in an opinion rises to the level of reversible error. Here, Dr. Zhang's report indicates that Ms. Phillips's seizure disorder was stable as of June 24, 2003. The ALJ cited the report to demonstrate that Ms. Phillips's seizure disorder had been stable for at least eight months prior to the administrative hearing. Although a treating physician's opinion is, under certain circumstances, given more weight, 20 C.F.R. § 404.1527(d)(2); *see Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)("More weight is given to the opinion of treating physicians because of their greater familiarity with the claimant's conditions and circumstances"), there is no reason to believe the ALJ would have discounted the opinion if he attributed it to Dr. Zhang, since (a) the ALJ accepted Dr. Zhang's November 2002 report that Ms. Phillips's epileptic condition was stable, and (b) there was no medical evidence to counter that conclusion. In these circumstances, the erroneous attribution of Dr. Zhang's July 2003 report to Dr. Gizzo is not reversible error.

**3.**

The ALJ determined that Ms. Phillips retained the capacity to perform unskilled sedentary work with the added restriction that she not work at unprotected heights or with hazardous machinery. Ms. Phillips contends that the ALJ's narrative offered in support this determination fell short of what is required (Pl.'s Mem. at 24). In making the RFC assessment, the ALJ must "set forth

19

a logical explanation of the effects of the symptoms, including pain, on the individual's ability to work." SSR 96-9p. To comply with the Commissioner's policy, the ALJ was required to at least minimally articulate the basis for Ms. Phillips's RFC determination. *See Zblewski v. Schweiker*, 732 F.2d 75, 79 (7th Cir. 1984); *Steward v. Bowen*, 858 F.2d, 1295, 1299 (7th Cir. 1988). We conclude that while the ALJ might have done more, he has done enough to meet this standard.

An individual is able to perform sedentary work if he or she can lift ten pounds occasionally, lift and carry items like "docket files, ledges, and small tools," sit most of the time and walk and stand occasionally. 20 C.F.R. § 404.1567(a). Dr. Gizzo's July 2003 report is the only medical report opining that Ms. Phillips suffers from severe exertional limitations in her ability to work (R. 365-374). The ALJ gave the July 2003 report limited weight, and we have explained above why he was permitted to do so. However, even in that opinion, Dr. Gizzo states that Ms. Phillips can lift and carry less than 10 pounds frequently and 20 pounds occasionally, and has no significant limitations on her ability to engage in repetitive reaching, handling or fingering (R. 367-68). Ms. Phillips's testimony presents some evidence to the contrary, but as we explain below, the ALJ did not err in discounting the severity of her subjective complaints. The ALJ at least minimally articulated a basis for his conclusion that Ms. Phillips, as a part of her work routine, could lift and carry ten pounds or less.

Further, the ALJ sufficiently discussed the evidence of record that shows his finding that Ms. Phillips retains the sitting, standing, and walking abilities required to perform sedentary work was not patently wrong. *First*, the ALJ cited medical evidence that indicated Ms. Phillips had no significant exertional limitations. *Second*, the ALJ described Ms. Phillips's daily activities which include household chores, "sitting for two hours at a time without needing to get up," shopping, and

20

"going to church services which last one and one half hours" (R. 19). These types of activities, combined with their regularity, are consistent with an ability to sit most of an eight-hour work day, and to walk and stand occasionally. *Third*, the ALJ explained why Ms. Phillips's subjective complaints and Dr. Gizzo's July 2003 opinion, which both suggest a more limited ability to sit, stand, and walk, were given diminished weight. *Fourth*, the ALJ's restriction stating that Ms. Phillips should not work at unprotected heights or with hazardous machinery or equipment is supported by medical evidence that the ALJ cited, and accounts for Ms. Phillips's infrequent epileptic seizures which she testified had experienced for many years before the alleged disability onset date. *Fifth*, an RFC of sedentary activity, which minimizes the lifting and walking required for work, addresses Ms. Phillips's obesity and sleep apnea in a manner that reflects Ms. Phillips's subjective complaints adjusted by the objective medical evidence indicating that she had no exertional limitations. Indeed, we note that in her July 2003 report, Dr. Gizzo (the only doctor to find any significant limits in Ms. Phillips's ability to work) did not link sleep apnea, either alone or in combination with obesity, to any limits in Ms. Phillips's "physical or mental ability to sustain work activity." *See* SSR 02-1p at *6. For these reasons, we conclude that the ALJ did minimally articulate his reasons for determining that Ms. Phillips has the RFC required for the performance of sedentary work.[5]

---

[5] The ALJ also found that Ms. Phillips suffers from two additional severe impairments: hypertension and non-insulin dependent diabetes mellitus. Ms. Phillips offered no testimony or other evidence indicating that these complaints affect her work-related exertional abilities in any meaningful way.

## C.

An ALJ's credibility finding is entitled to substantial deference and will not be disturbed unless it is patently wrong. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). Ms. Phillips contends that the ALJ's credibility determination was patently wrong on several counts.

*First*, Ms. Phillips asserts that it was patently wrong for the ALJ to afford her testimony less credibility because of her inconsistent statements regarding her driving. It is appropriate for the ALJ to consider any inconsistencies between the claimant's testimony and the record evidence in determining the former's credibility. 20 C.F.R. § 404.1529(c)(4). The ALJ stated the following in regard to Ms. Phillips's testimony: "At the hearing she testified that she has not driven for the past three years. Yet, Dr. Solomon's progress notes state that she had a seizure while driving in December 2000 (Exhibit 5F) and her son said that on June 22, 2001 she had a seizure while driving (Exhibit 12 E, 5 F, page 6)." (R. 19). Ms. Phillips claims her statement that she had not "been behind a wheel in over three years almost" (R. 387), was simply a "lapse of memory," and thus does not show an inconsistency between her testimony and the record (Pl.'s Mem. at 11). However, an inconsistency does exist; Ms. Phillips's testimony regarding her driving contradicts both her son's written testimony (R. 95) and Dr. Solomon's treatment notes (R. 158). Because there was an inconsistency between the record and her testimony, it was not patently wrong for the ALJ to consider this fact in his credibility determination. *See* SSR 96-7p at *5.[6]

---

[6]The ALJ considered the possibility that a lapse in memory – rather than "a conscious intention to mislead" – might be the reason for the inconsistency. The ALJ stated that "[a]lthough the inconsistent information provided by the claimant may not be the result of a conscious intention to mislead, nevertheless the inconsistencies *suggest* that the information provided by the claimant generally *may* not be entirely reliable" (R. 19) (emphasis added).

*Second*, Ms. Phillips also contends that the ALJ was patently wrong in suggesting that, because Ms. Phillips had unsuccessfully attempted to find work, an inability to find work as opposed to an inability to perform work might be "a motivation behind the current application" (R. 19). The Seventh Circuit has cautioned that "employment is not *proof positive* of ability to work, since disabled people, if desperate (or employed by an altruist), can often hold a job [.]... One can be unemployable..., yet employed." *Wilder v. Apfel*, 153 F.3d 799, 801 (7th Cir. 1998) (emphasis added). In the case at hand, the ALJ did not treat Ms. Phillips's job search as "proof positive" that she was not disabled. *Id.* Instead, he merely suggested that her job search might imply that difficulty finding a job was a reason she was applying for disability benefits. We cannot say that the ALJs comment regarding Ms. Phillips's job search renders his credibility determination patently wrong.

*Third*, Ms. Phillips also contends that ALJ improperly discounted the credibility of the testimony Ms. Phillips's sister-in-law, Ms. Marian Perkins-Phillips. The ALJ stated that:

> [a]lthough the testimony of the witnesses at the hearing were generally corroborative of the claimant's allegation, and has been duly considered, the close relationship between the witnesses and the claimant and the possibility that the testimony was influenced in favor of the claimant by a desire to help the claimant cannot be entirely ignored in deciding how much weight they deserve

(R. 19). Ms. Perkins-Phillips's testimony consisted entirely of a description of one seizure she witnessed. SSR 87-6 provides that:

> Due to the nature of the impairment, a complete description of a seizure cannot be obtained from the claimant. Therefore, if professional observation is not available, it is essential that a description be obtained from a third party (*i.e.*, family member, neighbor, etc.).

Ms. Perkins-Phillips's testimony was consistent with other evidence that described Ms. Phillips's seizures. Indeed, the ALJ recognized this early in his opinion when he found that "[w]itnesses and

medical records *consistently* describe her seizures as staring spells during which she licks her lip and moves her fingers" (R. 17). We agree with Ms. Phillips that there was no reason for the ALJ to discount Ms. Perkins-Phillips's testimony on this score. However, we fail to see how this error could affect the outcome. The ALJ explicitly found that Ms. Phillips's had epilepsy (R. 17). Frequency and controllability were the only facts at issue in regard to the ALJ's determination that Ms. Phillips did not demonstrate listing level seizure activity, and Ms. Perkins-Phillips's testimony did not address those matters. "No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989). Because the ALJ's error could not have a bearing on the disability determination, remand would be a futile gesture and is therefore not compelled.

*Fourth*, Ms. Phillips also contends that the ALJ's credibility determination regarding her husband was patently wrong. SSR 96-7p states that:

[t]he determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statement and the reasons for that weight.

Mr. Phillips testified that his wife's seizures were much more frequent than she reported to doctors. The ALJ gave Mr. Phillips's testimony less weight because of the lack of medical evidence to support his claims, coupled with his close relationship to and thus potential bias in favor of Ms. Phillips (R. 19). Ms. Phillips argues that this determination is unsupported because "[c]ertainly the physicians' recording numerous seizures and prescribing anticonvulsant medication represents medically acceptable evidence [of seizures]" (Pl.'s Mem. at 15). However, Ms. Phillips's argument

again assumes that the ALJ did not accept that Ms. Phillips suffered from epileptic seizures, which is not the case – earlier in his opinion, the ALJ found that Ms. Phillips suffered from epilepsy (R. 17). Plainly, the ALJ did not reject Mr. Phillips's testimony that Ms. Phillips suffers from epilepsy, but instead Mr. Phillips's testimony regarding the increased frequency of her seizures – testimony that was inconsistent with the medical evidence. We cannot say that it was patently wrong for the ALJ to assess the credibility of Mr. Phillips's testimony on this case based both on his relationship to Ms. Phillips, and the objective medical record.

*Fifth*, Ms. Phillips also alleges that the ALJ's credibility and RFC determinations were patently wrong because the ALJ found that the failure by Ms. Phillips to follow-up on lifestyle changes and weight-loss recommendations suggests that her symptoms "may not be as troublesome as has been alleged" (R. 19). The Commissioner's policy with respect to the evaluation in obesity cases of a failure to follow prescribed treatment is expressed in SSR 01-01p:

> Before failure to follow prescribed treatment for obesity can become an issue [sic] in a case, we must first find that the individual is disabled because [sic] of obesity or a combination of obesity and another impairment(s)[sic][.]…[W]e will find failure to follow prescribed treatment only when all of the following conditions exist: [t]he individual has an impairment(s) that meets the definition of disability…[,]a treating source has prescribed treatment that is clearly expected to restore the ability to engage in substantial gainful activity, and [t]he evidence shows that the individual has failed to follow prescribed treatment without good reason.

SSR 02-01p at *9. We do not believe that the ALJ's consideration of Ms. Phillips's failure to follow treatment recommendations in assessing credibility is contrary to this policy. SSR 02-01p addresses the relevance, *vel non*, of failure to comply with prescribed treatment in deciding whether someone with an otherwise disabling condition may not in fact be disabled. Here, the ALJ considered Ms. Phillips's failure to follow treatment recommendations in connection with an

25

antecedent question: whether her condition was as severe (or, disabling) as claimed. We do not read the consideration of evidence for this purpose as barred by SSR 01-01p.

Ms. Phillips cites *Rodriguez v. Chater*, No. 94 C 50335, 1995 WL 646381, at *5 (N.D. Ill. Oct. 31, 1995), for the proposition that "she should have been given an opportunity to express specific responses to the question of her attempt, or lack of it, to lose weight, and also whether or not she understood the importance of the recommended procedure" (Pl.'s Mem. at 16). *Rodriquez* is distinguishable from the case at hand. *Rodriquez* involved a claimant who was determined disabled and was denied benefits on the sole grounds that the claimant failed to follow proscribed treatment. 1995 WL 64638, at *2. Here, Ms. Phillips's failure to follow her doctor's recommendations was not the ALJ's sole basis for the denial of benefits; it was simply one factor in the ALJ's credibility determination regarding her subjective complaints.

Finally, Ms. Phillips also contends that she did not fail to follow-up on life style changes, because she did lose some weight and did try to exercise (Pl.'s Mem. 6 at 16). However, the ALJ found that doctors had been advocating the importance of weight loss and lifestyle change to Ms. Phillips for many years; that Ms. Phillips had been sent to a dietician in 2001; and still was not compliant with her recommended diet (R. 18). We cannot say that because Ms. Phillips testified that at the time of the July 2003 hearing she weighed ten pounds less than she did in May 2002, it was patently wrong for the ALJ to find that Ms. Phillips's repeated failure to follow-up on recommended lifestyle changes might "suggest that her symptoms may not be as troublesome as has been alleged" (R. 19).

## CONCLUSION

Ms. Phillips undoubtedly has a variety of conditions or impairments that cause difficulties in her life. But, not all conditions or impairments render a person disabled under the Act. In this case, we cannot say that the ALJ was patently wrong in determining that Ms. Phillips is not disabled under the Act.

Accordingly, the Commissioner's motion for summary judgment (doc. # 17) is GRANTED; the Plaintiff's motion for summary judgment (doc. # 15) is DENIED.

ENTER:

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**Dated: April 8, 2005**